UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

SOUALIOU DOSSO,

                            Plaintiff,

                -against-                                                    **REPORT AND**
                                                                             **RECOMMENDATION**
  KNIGHTS COLLISION EXPERTS, INC., *et*                                      20 CV 0461 (EK) (CLP)
  *al*,



                            Defendants.
----------------------------------------------------------X

**POLLAK**, United States Magistrate Judge:


On January 28, 2020, plaintiff Soualiou Dosso commenced this action against defendants

Knights Collision Experts, Inc., Knights Towing Corp., and Joseph Robles ("defendants"),

alleging that defendants failed to pay him proper overtime wages, in violation of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and New York Labor Law ("NYLL") Section

650, and failed to provide him with proper wage notices and wage statements, in violation of

Article 6 of the NYLL, §§ 191, 193.  (Compl.[1]).

By letter dated December 21, 2020, plaintiff's counsel notified the Court that defendants

had entered into a settlement agreement with the plaintiff, but without the knowledge or

involvement of plaintiff's counsel.  (Pl.'s 12/21/2020 Ltr.[2] at 1).  For the reasons set forth below,

it is respectfully recommended that the case be dismissed without prejudice and the alleged

settlement agreement be declared unenforceable and void.  This Court further respectfully

---

[1] Citations to "Compl." refer to plaintiff's Complaint, filed on January 28, 2020, ECF No. 1.
[2] Citations to "Pl.'s 12/21/2020 Ltr." refer to plaintiff's "Letter Issues Under Cheeks" filed on
December 21, 2020, ECF No. 13.

recommends that sanctions be imposed against defendants and defendants' counsel, Errol Margolin, Esq., in the form of plaintiff's attorney's fees expended on the default judgment motion and this motion.

<u>BACKGROUND</u>

The Complaint in this action was filed on January 28, 2020. (<u>See</u> Compl.). Despite proper service, defendants failed to appear, and a Certificate of Default was entered by the Clerk of Court on September 25, 2020. (<u>See</u> ECF No. 11). While plaintiff's counsel was in the process of preparing a motion for default judgment, he was contacted by counsel for defendants, who notified him that the parties had reached a settlement of the matter, without plaintiff's counsel's knowledge or involvement. Indeed, counsel for defendants, Errol Margolin, of the firm of Margolin & Pierce, LLP, wrote to plaintiff's counsel on October 8, 2020: "We are counsel to Knights Towing. I assume you are unaware that Knights settled the claim with Mr. Dosso many months ago and paid the settlement amount to your client pursuant to a fully executed settlement agreement." (Defs.' 12/29/2020 Ltr.,[3] Ex. B). Defense counsel also attached the purported Settlement Agreement in his email to plaintiff's counsel. (<u>See</u> Settle. Agree.[4]).

Plaintiff's counsel advised the Court of this correspondence in a letter, dated December 21, 2020, contending that the settlement appears to implicate Rule 4.2 of the New York Rules of Professional Conduct, which prohibits a lawyer from communicating with a person represented by counsel. (Pl.'s 12/21/2020 Ltr. at 1). According to plaintiff's counsel, he never authorized any communication between plaintiff and defense counsel and yet he notes that the Settlement

---

[3] Citations to "Defs.' 12/29/2020 Ltr." refer to defendants' Letter in Response to plaintiff's 12/21/2020 letter filed on December 29, 2020, ECF No. 16.

[4] Citations to "Settle. Agree." refer to the Exhibit attached to defendant's Letter in Response to plaintiff's 12/21/2020 letter filed on December 29, 2020, ECF No. 16-1.

Agreement was prepared by an attorney.  (Id. at 2).

Further, citing Saravia v. Royal Guard Fence Co., Inc., No. 19 CV 2086, 2020 WL 5231696 (E.D.N.Y. Sept. 2, 2020), plaintiff's counsel contends that the defendants' attorney in this case had a duty under the Second Circuit's decision in Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 207 (2d Cir. 2015), to seek court approval of the FLSA settlement because a judge may reject a settlement under Cheeks even if the parties agree among themselves to resolve the case.  (Pl.'s 12/21/2020 Ltr. at 2).  In the same letter, plaintiff's counsel requested that the defendants' counsel be Ordered to enter a Notice of Appearance and provide a chronology of the contact between counsel, the defendants, and the plaintiff.  (Id.)

On December 28, 2020, this Court issued an Order to Show Cause, directing Mr. Margolin to file a Notice of Appearance and to respond to plaintiff's letter.  (ECF No. 14).  The Court also set a hearing for January 13, 2021, which was later adjourned to January 15, 2021. (Id.; see Electronic Order, March 12, 2021).  Mr. Margolin filed a Notice of Appearance on December 29, 2020.  (ECF No. 15).  He also filed a letter on that same date, stating that his firm had received a request from Knights' Chief Operating Officer/Vice President, Adam Robles,[5] asking the firm to draft a settlement agreement.  (Defs.' 12/29/2020 Ltr. at 1).  He thereafter prepared and sent an agreement to Robles "setting out the terms" but allegedly told Mr. Robles that the Settlement Agreement would have to come from Margolin & Pierce.  (Id.)  According to Margolin, he then "followed up" with Knights regarding the settlement but "did not hear from Knights again."  (Id.)  Following the hearing on January 15, 2021, the parties submitted additional briefing on the issues raised in plaintiff's December 21, 2020 letter.

First, Mr. Margolin, in a letter dated January 27, 2021, requested that this Court approve

---

[5] Adam Robles is not a defendant in this case whereas his brother Joseph Robles, who is Knights' President, is.  (See Compl. at 3).

the settlement because "Plaintiff is bound by what he signed [and he] knew what he signed." (Defs.' 01/27/2021 Ltr.[6] at 1). Mr. Margolin also stated that plaintiff's signature was "witnessed by a notary who also signed." (Id.) In support of his position, Mr. Margolin attached to his letter an Affidavit submitted by Adam Robles. (See Robles Aff.[7]). According to Robles, it was plaintiff Dosso who approached Robles in March 2020 to discuss settlement. (Id. ¶ 4). Robles represents that after the parties agreed to settle the claim for $8,000, Robles contacted Margolin & Pierce and asked them to draft a settlement agreement. (Id. ¶¶ 4, 6). Robles also notes that the reason he reached out to Margolin & Pierce specifically was because they "had represented Knights before involving claims for overtime pay." (Id. ¶ 6). Mr. Margolin then drafted the Settlement Agreement, which Robles sent to plaintiff for his signature. (Id. ¶ 7).

Also, according to Robles, plaintiff stated that after he received the settlement proceeds, he would let his attorney know that the case had been settled and ask him to dismiss the case. (Id. ¶¶ 5, 7). Robles claims that he relied on plaintiff's statement that he would let his attorney know the matter had settled and he had Knights pay the settlement amount to plaintiff. (Id. ¶¶ 7, 8). Robles states that plaintiff confirmed receipt of the monies and told one of Knights' managers that he would let his attorney know the case had settled. (Id. ¶ 9). As such, Robles did not feel it necessary to let Margolin's firm know because plaintiff said he would "take care" of the settlement. (Id. ¶ 10). When he received the notice of default from plaintiff's counsel approximately six months later, Robles contacted Margolin & Pierce to let plaintiff's counsel know that the matter had settled and at that time sent Margolin & Pierce the signed Agreement. (Id. ¶ 11).

---

[6] Citations to "Defs.' 01/27/2021 Ltr." refer to defendants' Post-Conference Letter filed on January 27, 2021, ECF No. 18.

[7] Citations to "Robles Aff." refer to the Affidavit of Adam Robles dated January 26, 2021, ECF No. 18-1.

In response, plaintiff's counsel submitted a letter dated February 19, 2021, in which he reiterates his argument that defendants violated not only the requirements of <u>Cheeks</u>, but that counsel also violated the New York State Rules of Professional Conduct, N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0, including Rule 4.2(a). (Pl.'s Reply[8] at 1). Since counsel has been unable to contact the plaintiff following the settlement, he urges the Court to admonish defense counsel for his conduct, make it clear what counsel's duty is under <u>Cheeks</u>, declare the settlement void and unenforceable, and impose sanctions against defendants and counsel to compensate plaintiff's counsel for the time wasted as a result of the defendants' conduct in this case. (<u>Id.</u>)

Mr. Margolin thereafter, in a letter dated February 22, 2021, denies that his firm did anything wrong and argues that the firm "had no knowledge [of the settlement] nor did it counsel its client to get the adverse party to sign the agreement and release." (Defs.' Reply[9] at 2). He represents that the firm did not advise Knights to obtain plaintiff's signature on the Agreement; "[r]ather it advised its client to comment on the draft agreement and to return the draft agreement to be finalized so this firm could effectuate a settlement with plaintiff's counsel." (<u>Id.</u> at 2). Counsel states that "on two occasions" attempts were made to get permission from its client to effectuate the settlement, but Knights never responded. (<u>Id.</u>) Mr. Margolin further represents that the firm would never advise a client to enter into a settlement agreement directly with an opposing party, "without notice to opposing counsel." (<u>Id.</u>) Mr. Margolin indicates that "[h]ad [the] firm been retained," it would have complied with <u>Cheeks</u> and he urges the Court to dismiss the case without prejudice because the firm's intention was never to seek settlement without

---

[8] Citations to "Pl.'s Reply" refer to the letter submitted by Mr. Hassan filed February 19, 2021, ECF No. 20.
[9] Citations to "Defs.' Reply" refer to the letter submitted by Mr. Margolin filed February 22, 2021, ECF No. 21.

court approval or without consulting opposing counsel.  (Id.)  Counsel states that "the first I knew of the settlement agreement in this case was when the plaintiff's counsel moved for a default in October 2020 following the entry of default."  (Id.)

## DISCUSSION

As an initial matter, the Court must determine whether the purported settlement is enforceable in light of the failure to comply with the Cheeks requirement that courts review and approve of any proposed settlement under FLSA.

## A.  The Requirements of Cheeks

### 1.  Legal Standard

In Brooklyn Savings Bank v. O'Neil, the Supreme Court described the FLSA's primary purpose:  "to protect certain groups of the population from substandard wages and excessive hours" as a result of "unequal bargaining power as between employer and employee."  324 U.S. 697, 706-07 (1945); see also Cheeks v. Freeport Pancake House, Inc., 796 F.3d at 207 (describing the FLSA's goal of "prevent[ing] abuses by unscrupulous employers, and remedy[ing] the disparate bargaining power between employers and employees").  Long before the Second Circuit in Cheeks considered whether parties in an FLSA action could enter into a private stipulation of dismissal under Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, see Cheeks v. Freeport Pancake House, Inc., 796 F.3d at 206, the Eleventh Circuit in Lynn's Food Stores, Inc. v. United States Department of Labor, held that "FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate."  679 F.2d 1350, 1351 (11th Cir. 1982).  In further explaining why "the FLSA is distinct from all other employment statutes," this Court stated:

6

> Low wage employees, even when represented in the context of a pending lawsuit, often face extenuating economic and social circumstances and lack equal bargaining power; therefore, they are more susceptible to coercion or more likely to accept unreasonable, discounted settlement offers quickly.

Socias v. Vornado Realty L.P., 297 F.R.D. 38, 40 (E.D.N.Y. 2014).

In Cheeks, the Second Circuit made it clear that "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." 796 F.3d at 206. Citing Socias v. Vornado Realty L.P., the Second Circuit noted: "judicial approval furthers the purposes of the FLSA, because 'without judicial oversight employers may be more inclined to offer, and employees, even when represented by counsel, may be more inclined to accept, private settlements that ultimately are cheaper to the employer than compliance with the Act.'" Id. at 205-06 (alterations omitted) (quoting 297 F.R.D. at 40).

In order to avoid the strictures imposed by the need for court approval, defendants have continued to engage in private settlement arrangements with their employees even after Cheeks made it clear that such arrangements would not be allowed without court review. See, e.g., Gallardo v. PS Chicken Inc., 285 F. Supp. 3d 549, 551 (E.D.N.Y. 2018) (denying dismissal without prejudice where parties entered into a settlement without first receiving settlement approval from court); Guarnero-Ruiz v. 36-03 Food, LLC, No. 17 CV 3178, 2017 WL 7049543, at *1-2, 10 (E.D.N.Y. Dec. 11, 2017) (recommending denial of dismissal without prejudice where plaintiff employees in FLSA action were approached by their employer with releases and a settlement agreement but no settlement was approved by the court).

This Court has in fact dealt with numerous instances in which defendant employers have offered, and plaintiff employees have accepted, settlements without the involvement of plaintiff's counsel, and, at times, without the involvement of defendants' counsel either. See,

e.g., Misiewicz v. D'Onofrio Gen. Contractors Corp., No. 08 CV 4377, 2010 WL 2545439, at *6

(E.D.N.Y. May 17, 2010), report and recommendation adopted, 2010 WL 2545472 (E.D.N.Y.

June 18, 2010); cf. Dawidowicz v. Black Square Builders Corp., No. 15 CV 7380, 2016 WL

7665417, at *5 (E.D.N.Y. 2016), report and recommendation adopted, 2012 WL 74712

(E.D.N.Y. Jan. 6, 2017) (citing allegations of "under the table" deal between plaintiff and

defendant).

 The danger in allowing these settlements to proceed without court oversight is that the

employees, without the benefit of counsel, approach the negotiations from a weaker bargaining

position and are more likely to succumb to pressure from the employer to accept settlements that

fail to reflect the full measure of the damages owed.  See, e.g., Nall v. Mal-Motels, Inc., 723 F.3d

1304, 1306 (11th Cir. 2013) (where the employee testified she felt pressured to accept

employer's out-of-court settlement offer because "she was homeless at the time and needed

money" (internal quotation marks omitted)); Guarnero-Ruiz v. 36-03 Food, LLC, 2017 WL

7049543, at *10 (where plaintiff "bargained away a potential $60,000 claim for $4,000");

Walker v. Vital Recovery Servs., Inc., 300 F.R.D. 599, 600 n.4 (N.D. Ga. 2014) (where "twenty-

two plaintiffs accepted the offers of judgment—many for $100—because they are unemployed

and desperate for any money they can find" (internal quotation marks omitted)).

 In some instances, where employees are still employed, employers use threats of job loss

to encourage employees to drop their claims or offer to resolve wage and hour disputes by

agreeing to continue the employee's employment but at wages less than those required by law.

See Lynn's Food Stores, Inc. v. United States Dep't of Labor, 679 F.2d at 1354 (describing

situation where employer offered employees $1,000 checks despite Department of Labor

determination that employees were owed more than $10,000 and employer stated that "only

malcontents" refused the checks); Saravia v. Royal Guard Fence Co., 2020 WL 5231696, at *7 (noting that employee was convinced to sign a settlement agreement in exchange for $4,000 and a promise to "possibly" get his job back); Alvarez v. 894 Pizza Corp., No. 14 CV 6011, 2016 WL 4536574, at *6 (E.D.N.Y. Aug. 2, 2016), report and recommendation adopted, 2016 WL 4540817 (E.D.N.Y. Aug. 30, 2016) (describing situation where employer told FLSA plaintiff that he could not keep his job if he continued the lawsuit); Socias v. Vornado Realty L.P., 297 F.R.D. at 41 (noting that such settlements are "ultimately cheaper to the employer than compliance with the Act"); cf. Misiewicz v. D'Onofrio Gen. Contractors Corp., 2010 WL 2545439, at *1 (noting that plaintiff sought to settle for three years of guaranteed employment absent counsel).

One obvious benefit to a private settlement with an employee is that some defendants believe they can avoid the added expense of paying counsel fees, which the employee may agree to forgo in exchange for a larger recovery to the employee. See Santos v. ET&K Foods, Inc., No. 16 CV 7107, 2019 WL 2435857, at *2 (E.D.N.Y. Feb. 26, 2019), report and recommendation adopted, Electronic Order, March 31, 2019 (describing situation where plaintiff settled for more than $20,000 and plaintiff's counsel alleged that the "backdoor settlement agreement" was used to avoid attorney's fees). As the court in Socias noted, however, "although employees, through counsel, often voluntarily consent to dismissal of FLSA claims and, in some instances, are resistant to judicial review of settlement," judicial approval furthers the purposes of the FLSA and serves to protect the employees. 297 F.R.D at 40.

When claims of such conduct on the part of employers are brought to the attention of the courts, some courts have declared the settlement void and unenforceable. See, e.g., Cheeks v. Freeport Pancake House, Inc., 796 F.3d at 206; Nall v. Mal-Motels, Inc., 723 F.3d at 1306;

Guarnero-Ruiz v. 36-03 Food, LLC, 2017 WL 7049543, at *6.  Some courts have held hearings

to evaluate the credibility of competing claims when there are concerns that coercion or undue

influence was involved in reaching a settlement.  See, e.g., Misiewicz v. D'Onofrio Gen.

Contractors Corp., 2010 WL 2545439, at *6; see also Saravia v. Royal Guard Fence Co., Inc.,

2020 WL 5231696, at *7; Santos v. ET&K Foods, Inc., 2019 WL 2435857, at *3.  When

appropriate, courts have imposed sanctions upon the attorneys or on the defendant employers.

Alvarez v. 894 Pizza Corp., 2016 WL 4536574, at *6-8 (requiring employer to pay attorney's

fees as a sanction under the inherent power of the court); cf. Saravia v. Royal Guard Fence Co.,

Inc., 2020 WL 5231696, at *10 (imposing sanctions under Fed. R. Civ. P. 11 for

misrepresentations to the court during hearing regarding settlement).  But see Misiewicz v.

D'Onofrio Gen. Contractors Corp., 2010 WL 2545439, at *6 (declining to impose sanctions).

The Ninth Circuit has even allowed a plaintiff's counsel to obtain a default for attorney's fees

when the district court had already entered default, but plaintiffs subsequently entered into a

settlement with defendants without informing their counsel and thereafter disappeared.  See

Budanio v. Saipan Marine Tours, Inc., 22 F. App'x 708, 710 (9th Cir. 2001).

    2.  Analysis

        In the instant case, it is alleged that the plaintiff accepted the monies offered by defendant

in settlement and disappeared.  (Pl.'s Reply at 6-7).  He did not contact his own counsel to

inform counsel the case had settled, nor did defendant or defendants' counsel, by their own

admission, contact plaintiff's counsel to inform him of the settlement.  (Id.; Defs.' Reply at 2).

Mr. Robles contends that plaintiff approached him to discuss settlement and that plaintiff, after

signing the Settlement Agreement, assured Robles that he would contact plaintiff's counsel.

(Robles Aff. ¶ 5).  Plaintiff's counsel is skeptical that it was plaintiff who reached out to

defendant because plaintiff had specifically retained counsel to pursue his wage and hour claims. (Pl.'s Reply at 5).  Indeed, given that the defendant was in default and had not answered the Complaint, plaintiff was in a good position to obtain an award of full damages from the Court after an inquest.  (See ECF No. 11).  Of course, because plaintiff is no longer available to be questioned about these events, a further hearing to determine the credibility of the participants to this settlement would be unproductive.

Regardless of whether Mr. Dosso is available for further questioning, the purported settlement in this case was clearly obtained in violation of Cheeks.  Defendants attempted to effectuate a settlement that resulted in dismissal with prejudice of an FLSA case absent court approval.[10]  (See Settle. Agree. ¶ 3 (requiring "a signed stipulation of discontinuance with prejudice")).  More troubling, however, is the conduct of defendants and defense counsel in this case.  Although this Court will address that conduct further in Part B supra, some of their actions bear mention here.  Both defendants and defense counsel were aware of the requirement under Cheeks to obtain court approval of any FLSA settlement.  As Robles stated, he specifically contacted Margolin & Pierce because the firm had represented Knights in prior claims for overtime pay, evidencing at least a basic familiarity with FLSA cases and their intricacies. (Robles Aff. ¶¶ 4, 6).

Defense counsel, on the other hand, states that "[h]ad this firm been retained" it would have complied with Cheeks.  (Defs.' Reply at 2).  Although counsel appears to be attempting to excuse the firm's conduct in failing to notify the Court or counsel because it had not "been retained," several statements in the Settlement Agreement referring to the parties having received

---

[10] Regardless of whether the dismissal was with or without prejudice, this Court would be required to conduct a fairness hearing under Cheeks.  See Gallardo v. PS Chicken Inc., 285 F. Supp. 3d at 551 (holding that the Cheeks requirement extends to dismissals without prejudice).

advice of counsel, and statements in subsequent letters drafted by counsel, demonstrate that counsel recognized that Knights was its client.  Specifically, contrary to counsel's representation that the firm had not been "retained" in this matter, counsel, in his February 22, 2021 letter, denies advising Knights to obtain plaintiff's signature on the Agreement, but states that "it advised *its client* to comment on the draft agreement. . . ."  (Id. at 1-2 (emphasis added)).  Counsel further states that "on two occasions" attempts were made to get permission from "*its client*" to effectuate the settlement, but Knights never responded.  (Id. at 2 (emphasis added)).  The Agreement itself states that "[w]ithin five (5) business days of the Effective Date, Dosso shall deliver to *Knights' counsel in the Action* a signed stipulation of discontinuance with prejudice in the form attached as Exhibit A."  (Settle. Agree. ¶ 3 (emphasis added); Defs.' 12/29/2020 Ltr. at 2 (emphasis added)).  Lastly, counsel's initial email to plaintiff's attorney regarding the settlement acknowledged that:  "We are counsel to Knights Towing."  (Defs.' 12/29/2020 Ltr., Ex. B).

Counsel also stated in his letter to this Court that the plaintiff here "executed the settlement and represented he had done so freely and on the advice of counsel" and therefore, "is bound by what he signed; knew what he signed; and his signature is witnessed by a notary who also signed the agreement."  (Defs.' 01/27/21 Ltr. at 1).  This statement demonstrates, at best, a deliberate indifference to the need for and the purposes behind the Cheeks requirement of judicial approval.  Importantly, this is not the first time that Mr. Margolin and his firm have been put on notice regarding their conduct in an FLSA case.

In D'Arpa v. Runway Towing Corp., Mr. Margolin prepared a form for plaintiff Josue Pujols-Vasquez's signature in which the plaintiff withdrew from the FLSA action, allegedly because defendant had offered him a job.  See D'Arpa, et al v. Runway Towing Corp., No. 12

CV 1120, ECF 34 at 2; (Pl.'s Reply at 3).  Although the court in that case ultimately approved

the settlement of the matter, the court held a hearing and directed Mr. Margolin not to have

contact with the plaintiff or members of the plaintiff class.  See D'Arpa, et al v. Runway Towing

Corp., ECF 45 at 19; (Pl.'s Reply at 3-4).  Based on their past experiences, Mr. Margolin and his

firm should have been particularly cautious in advising their client regarding the obligation to

present any settlement to the Court or it would not be binding.  They also should have, in an

abundance of caution, reached out to plaintiff's counsel.  Instead, they claim they attempted to

contact their client and when they heard nothing further, they did nothing further.  (Defs.'

12/29/2020 Ltr. at 1; Defs.' Reply at 2).  Counsel's statement that "the first I knew of the

settlement agreement in this case was when the plaintiff's counsel moved for a default in

October 2020 following the entry of default" (Defs.' Reply at 2), indicates a level of conscious

avoidance of the requirements that counsel faces when effecting a settlement under Cheeks.

    Having considered the circumstances underlying the current dispute and being aware that

plaintiff is no longer in communication with his attorney, the Court respectfully recommends that

the settlement be declared null and void.  Apart from the circumstances leading to the

Agreement, the Agreement itself contains several impermissible clauses[11] such that, had the

Agreement been presented to this Court, it would have been rejected.  Although this Court

acknowledges that other cases have refused to dismiss a case, even without prejudice, for

---

[11] The Court refers specifically to the confidentiality provision (Settle. Agree. ¶ 6), which has
been uniformly rejected by courts in this circuit, see, e.g., Garcia v. Good for Life by 81, Inc., No. 17 CV
7228, 2018 WL 3559171, at *4 (S.D.N.Y. July 12, 2018); Nieto v. Izzo Constr. Corp., No. 15 CV 6958,
2018 WL 2227989, at *2 (E.D.N.Y. May 14, 2018), and the general release which has been found in
other cases to be overbroad (Settle. Agree. ¶ 2).  See, e.g., Lopez v. 41-06 Bell Blvd. Bakery LLC, No. 15
CV 6953, 2016 WL 6156199, at *2 (E.D.N.Y. Oct. 3, 2016), report and recommendation adopted, 2016
WL 6208481 (E.D.N.Y. Oct. 21, 2016) (holding that "broad general releases" contravene the protective
nature of the FLSA); Gonzales v. Lovin Oven Catering of Suffolk, Inc., No. 14 CV 2824, 2015 WL
6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (holding that a settlement agreement containing a general
release violated the FLSA).

violations of <u>Cheeks</u>, <u>see, e.g.</u>, <u>Guarnero-Ruiz v. 36-03 Food, LLC</u>, 2017 WL 7049543, at *10, the fact that even plaintiff's counsel cannot contact plaintiff would make continuing this case impossible. As such, the Court further recommends that the case be dismissed without prejudice.

**B. Whether Defendants and Defendants' Counsel Engaged in Sanctionable[12] Behavior**

Plaintiff's counsel asks this Court to impose an "appropriate monetary remedy/sanction against Defendants and defense counsel to compensate for the immense waste of time by the Court, the parties and attorneys that have been caused by the violations of . . . <u>Cheeks</u>" as set forth in his letter. (Pl.'s Reply at 8). Plaintiff's counsel argues further that defendants' counsel's conduct in this case contravenes Rule 4.2(a) of the New York Rules of Professional Conduct and he seeks an Order imposing "an appropriate remedy against the defense for this violation." (<u>Id.</u> at 5).

1. <u>Legal Standard for Sanctions</u>

The Supreme Court has stated that courts have "inherent power" to "discipline [those] who appear before it" including by "impos[ing] monetary sanctions against a litigant (or its counsel) for misconduct." <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 44-46 (1991). However, this inherent power should only be used to sanction "bad faith, vexatious, or wanton acts." <u>International Techs. Mktg., Inc. v. Verint Sys., Ltd.</u>, 991 F.3d 361, 368 (2d Cir. 2021) (internal quotation marks and alterations omitted) (quoting <u>Chambers v. NASCO, Inc.</u>, 501 U.S. at 44). More specifically, "sanctions are not appropriate unless the challenged actions are (1) entirely without color and (2) motivated by improper purposes. . . ." <u>Milltext Indus. Corp. v. Jacquard</u>

---

[12] Magistrate judges have the power to issue sanctions without referral from a district judge. <u>See</u> <u>Meyer Corp. U.S. v. Alfay Designs, Inc.</u>, No. 10 CV 3647, 2017 WL 5515938, at *2 (E.D.N.Y. Mar. 6, 2017) (discussing monetary sanctions as "non-dispositive" and reviewing issuance of sanctions for clear error). However, this Court recommends sanctions as part of the Report and Recommendation that is currently before it, particularly because this Court is recommending a disposition of the case in the form of dismissal without prejudice.

Lace Co., 55 F.3d 34, 38 (2d Cir. 1995) (internal quotations omitted).  Due process requires notice and opportunity to be heard before imposition of "*any* kind of sanctions."  Saravia v. Royal Guard Fence Co., Inc., 2020 WL 5231696, at \*5 (quotations and citations omitted).[13]

Additionally, "[a]lthough disciplinary rules and rules of professional responsibility are not statutorily mandated, federal courts enforce professional responsibility standards pursuant to their general supervisory authority over members of the bar."  SEC v. Lines, 669 F. Supp. 2d 460, 463 (S.D.N.Y. 2009) (quoting United States v. Hammad, 858 F.2d 834, 837 (2d Cir. 1988)).  It "is well established that courts have an obligation, if they become aware of an ethical breach, to report the attorney who committed the ethical breach or fashion an alternative sanction."  People v. Perez, 37 Misc. 3d 272, 293, 946 N.Y.S.2d 835, 850 (N.Y. Sup. Ct. 2012).

2. Defendants' Counsel, Mr. Margolin,[14] Violated Rule 4.2(a)

In New York, federal district courts are guided by the ABA Model Rules of Professional

---

[13] The Court finds that both defendants and defense counsel have been afforded due process because they were on notice of, and had the chance to respond to, the potential for sanctions.  There has been extensive motion practice regarding the Cheeks violation, and both defense counsel and defendants through counsel had an opportunity to respond to plaintiff's counsel's official request for sanctions in their reply.  (See Pl.'s Reply (filed Feb. 19, 2021); Defs.' Reply (filed Feb. 22, 2021)).  Alvarez v. 894 Pizza Corp., 2016 WL 4536574, at \*7 (noting that "[i]n the context of sanctions, 'the opportunity to submit written briefs may be sufficient to provide an opportunity to be heard'" (quoting Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323, 335 (2d Cir. 1999))).

[14] In his filings, Mr. Margolin has been vague as to whether he personally, or his firm generally, was aware of the events giving rise to the present motion.  (Compare Defs.' Reply at 2 ("This firm had no knowledge . . .) and Defs.' 12/29/2020 Ltr. at 2 ("We did not communicate with Mr. Dosso. . . .") with Defs.' Reply at 2 ("[T]he first I knew of the settlement agreement. . . .")).  Regardless of whether Mr. Margolin himself drafted the Settlement Agreement or someone in his firm did, "a partner in a law firm" is responsible for violations of other lawyers in the firm if he either knew of the conduct when it could have been prevented but failed to take remedial action or should have known of the conduct at a time when it could have been prevented.  See N.Y. Rules of Pro. Conduct r. 5.1(d).  As a named partner of the firm, Mr. Margolin clearly has supervisory authority and at least knew of the conduct in this case on January 27, 2021 when he continued to insist upon enforcement of the settlement.  (See Defs.' 01/27/2021 Ltr. at 1; see also Rice v. NBC Universal Media, LLC, No. 19 CV 447, 2019 WL 3000808, at \*6 (S.D.N.Y. July 10, 2019), report and recommendation adopted, 2019 WL 3752491 (S.D.N.Y. Aug. 8, 2019) (noting that, because the actions of the law firm and attorney were "indistinguishable," the court could impose sanctions "jointly and severally").  As such, this Court refers to Mr. Margolin and the firm interchangeably throughout this section.

Conduct, the ABA Model Code of Professional Responsibility, and the New York Rules of Professional Conduct.[15]  See Blue Planet Software, Inc. v. Games Int'l, LLC, 331 F. Supp. 2d 273, 275 (S.D.N.Y. 2004) (noting the various sources of law courts consider in disciplinary proceedings).  Rule 4.2(a) provides that:

> In representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law.

N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0 (emphasis added); N.Y. Rules of Pro. Conduct r. 4.2(a).  Although the lawyer must have actual knowledge that the other party is represented, "such knowledge may be inferred from the circumstances."  N.Y. Rules of Pro. Conduct r. 4.2(a) cmt. 10.  "Thus, the lawyer cannot evade the requirement of obtaining the consent of counsel by ignoring the obvious."  Id.  When advising a client regarding such communications, a "lawyer may properly advise a client to communicate directly with a represented party," but may not advise the client to "encourage or invite the represented person to take actions without the advice of counsel," id. cmt. 11, and the lawyer must notify opposing counsel before those communications take place.  Id. (stating comment 11 is subject to Rule 4.2(b), which requires "reasonable advance notification").  Additionally, Rule 4.2(a) "applies even though the represented person initiates or consents to the communication."  SEC v. Lines, 669 F. Supp. 2d at 463 (citing id. cmt. 3).  Further, "[a] lawyer is not permitted to ignore the plain words of the rule and then escape responsibility for violating it because no harm was caused, or because

---

[15] The disciplinary rules in New York have changed several times throughout the years, with the most recent version promulgated in 2009.  See United States v. Walker, No. 18 CR 087, 2019 WL 1876873, at *4 (E.D.N.Y. Apr. 26, 2019) (setting out the history of Rule 4.2(a) in particular).  However, Rule 4.2(a) has remained largely the same over time, so this Court has cited several cases that predate the most recent promulgation of the Rule.

counsel for the party receiving the communication was [later] alerted that it had been made." In re Conduct of Hedrick, 822 P.2d 1187, 1191 (Or. 1991) (describing application of no-contact disciplinary rule similar to that of New York).

Plaintiff's counsel does not allege that defense counsel communicated directly with plaintiff.  As such, the issue in this case is whether defense counsel "cause[d]" his client to communicate with plaintiff when he knew him to be represented by another lawyer without notice to plaintiff's attorney.  N.Y. Rules of Pro. Conduct r. 4.2(a).  There is little case law addressing what conduct constitutes counsel "caus[ing]" a client to communicate with an adverse party.  See Holdren v. Gen. Motors Corp., 13 F. Supp. 2d 1192, 1195 (D. Kan. 1998) (noting the "dearth of authority").  In Holdren v. General Motors Corp., the court found that counsel "cause[d]" the contact because counsel "had more than mere knowledge of his client's contacts" with adverse parties and the lawyer, among other things, advised his client how to draft an affidavit.  Id.  On the other hand, in Miano v. AC&R Advertising, Inc., the court concluded that counsel did not "cause" the contact where the client recorded conversations with adverse parties, because the court found that the attorney did not "engineer or arrange" the meetings or recordings.  148 F.R.D. 68, 88 (S.D.N.Y. 1993), memorandum opinion adopted, 834 F. Supp. 632 (S.D.N.Y. 1993).

Counsel's conduct in this case is more closely analogous to the circumstances in Holdren than in Miano, and in some ways is more egregious than the conduct in Holdren.  Here, Mr. Margolin's firm actually drafted the Settlement Agreement with knowledge of the facts of the *pending litigation* and knowledge of his client's negotiations with a represented party.  (See Settle. Agree. at 1).  Indeed, the Agreement cited the docket number of the present action.  (Id.)  Thus, by providing the Settlement Agreement to Mr. Robles, Mr. Margolin and his firm aided in

his client's efforts to negotiate an out-of-court settlement with that represented party, and in effect "engineer[ed]" at least one of the exchanges between the parties, as there would be no other reason to prepare a settlement agreement other than to present it to one's adversary. Additionally, Mr. Margolin's conduct goes farther than the attorney in <u>Holdren</u> who informed his client how to create an affidavit; here, rather than instructing the defendants as to how to create a settlement agreement, Mr. Margolin and his firm specifically drafted the document and "set[] out the terms" of the Agreement in what was intended to be a legally binding instrument.  (Defs.' 12/29/2020 Ltr. at 1).

Courts have also held that "[e]ven if a client first raises or proposes communication with an adverse party, a lawyer may still be deemed to have caused the communication by 'observing or advising that it might be desirable for the client to speak to the adverse party, if the lawyer's action is a material factor in the client's final decision to engage in such a communication.'" <u>Holdren v. General Motors Corp</u>, 13 F. Supp. 2d at 1196 (quoting <u>Miano v. AC & R Advert., Inc.</u>, 148 F.R.D. at 88); <u>Meachum v. Outdoor World Corp.</u>, 171 Misc. 2d 354, 366, 654 N.Y.S.2d 240, 249 (N.Y. Sup. Ct. 1996).  Although Mr. Margolin insists that he did not advise his client to speak with plaintiff or obtain plaintiff's signature, the fact that defendants were told that notarization was necessary to make it a legally enforceable document is the equivalent of telling the client to obtain plaintiff's signature.  Thus, the fact that his firm provided a "draft" settlement agreement that was specifically tailored to the facts of this case and instructed the client that notarization was necessary can be considered a "material factor" in his client's decision to present the Settlement Agreement to plaintiff.  Without the Agreement and counsel's advice, defendants' efforts to settle the case with the plaintiff would not have succeeded.[16]

---

[16] Mr. Margolin has produced no record of any emails between him and his client regarding this matter, so the Court is unable to verify whether Mr. Margolin's assertions regarding their correspondence

Additionally, Mr. Margolin clearly knew that plaintiff was represented by an attorney or was on notice such that he could not "evade the requirement of obtaining the consent of counsel by ignoring the obvious." N.Y. Rules of Pro. Conduct r. 4.2(a) cmt. 10. The Settlement Agreement references this case's docket number, and a brief search of the docket would show that plaintiff was represented by counsel. (See Settle. Agree. at 1). As another court has noted, "counsel cannot be excused from the Court's [finding of a violation] simply because of sloppy case management." Scott v. Chipotle Mexican Grill, Inc., No. 12 CV 8333, 2014 WL 4852063, at *3 (S.D.N.Y. Sept. 29, 2014). Finally, there is no dispute that plaintiff's counsel was not informed of the communication in advance. (See Defs.' 12/29/2020 Ltr., Ex. B).

Not only was the Margolin firm, and therefore Mr. Margolin, aware that plaintiff was represented by counsel and caused their client's further contact with plaintiff by providing the client with a fully drafted legal agreement, but counsel failed to communicate with plaintiff's counsel. This Court, therefore, respectfully recommends a finding that Mr. Margolin's firm violated Rule 4.2(a).

3. Defendants' Cheeks Violation is Sanctionable

Although Cheeks violations often result in the settlement being declared null and void, see, e.g., Cheeks v. Freeport Pancake House, Inc., 796 F.3d at 206; Nall v. Mal-Motels, Inc., 723 F.3d 1306; Guarnero-Ruiz v. 36-03 Food, LLC, 2017 WL 7049543, at *6, on at least two occasions, this Court has imposed sanctions upon individual defendant employers for attempting to "settle" an FLSA case absent court approval. See Saravia v. Royal Guard Fence Co., Inc., 2020 WL 5231696, at *7; Alvarez v. 894 Pizza Corp., 2016 WL 4536574, at *6-8. In other

---

are accurate beyond looking to the statements in the Robles Affidavit. Nor has he produced any intrafirm communications, so this Court cannot determine who at the firm was responsible for the communications between Knights and Margolin & Pierce or the Settlement Agreement draft.

cases, parties have been warned that attempting to distribute a settlement before the court approves a settlement "may result in the imposition of sanctions."  See, e.g., Ramnauth v. Hudson Building Services LLC, No. 19 CV 4294, Electronic Order, July 21, 2020.

  In Saravia v. Royal Guard Fence Co., Inc., the court found that two individuals had attempted to "manipulate [the plaintiff] into firing his lawyer and dropping his lawsuit."  2020 WL 5231696, at *7.  In Alvarez v. 894 Pizza Corp., the court found that the defendant "required plaintiff to choose between continuing his employment and maintaining his lawsuit."  2016 WL 4536574, at *6.  This case is no different from Saravia and Alvarez, because, here, defendants claim to have paid plaintiff $8,000 in exchange for plaintiff's agreement to dismiss the case, despite the fact that plaintiff's claims in the action likely exceeded that amount.  (See Robles Aff. ¶¶ 4-5).  Indeed, the conduct in this case may be even more egregious than that found in Alvarez, where the plaintiff filed a letter stating he "ha[d] no problems and ha[s] been fully paid all the money that has ever been owed to me."  2016 WL 4536574, at *2.  Here, the Court is constrained to accept the representation of defendants that plaintiff was actually paid $8,000. Without the ability to hear plaintiff's version of events, there is no way to know if, in fact, the settlement was for $8,000 or for something less, or whether plaintiff was actually paid this amount, or if there was any coercion involved in persuading plaintiff to accept something less than he was claiming.  Even where the plaintiff filed the aforementioned letter in Alvarez, the court found "no indication that [plaintiff] achieved any of the benefits sought by bringing" the suit.  Id. at *3.  Defendants' conduct here and the Court's inability to inquire of the plaintiff as to what occurred presents the very concerns that prompted the Cheeks requirement of court review. Like the court in Alvarez, this Court is similarly unable to find that plaintiff achieved the benefits of his lawsuit.  Defendants clearly violated Cheeks when they entered into this purported

"settlement" without first obtaining court approval, and they did so with the assistance of counsel who drafted the Agreement that memorialized the settlement.

The question that remains is whether such conduct warrants monetary sanctions.

4.  Monetary Sanctions are Appropriate in this Case[17]

As set forth above, pursuant to its inherent power, this Court may issue sanctions against litigants[18] for bad faith conduct.  See Huebner v. Midland Credit Mgmt., Inc., 897 F.3d 42, 56 (2d Cir. 2018).  Bad faith requires the judge to find both "clear evidence that the challenged actions are entirely without color and are taken for reasons of . . . improper purposes and a high degree of specificity in the factual findings of the lower courts."  Manchester Mgmt. Co., LLC v. Echo Therapeutics, Inc., 297 F. Supp. 3d 451, 471 (S.D.N.Y. 2018) (citing Milltex Indus. Corp. v. Jacquard Lace Co., 55 F.3d at 39-40).

Here, defendants, through Mr. Robles, engaged in settlement discussions with Mr. Dosso even though they knew there was a pending case, and that Mr. Dosso was represented by counsel in that case.  (See Robles Aff. ¶¶ 5. 9; Settle. Agree.).  Not only did they discuss settlement, but Mr. Robles reached out to his own counsel and requested that they prepare a settlement

---

[17] This Court further notes that "[b]oth the FLSA and the NYLL provide for a mandatory award of reasonable attorneys' fees and costs to a prevailing plaintiff," including where a plaintiff settles the action.  Garcia v. SBKU Servs. Inc., No. 17 CV 3130, 2021 WL 1394480, at *1 (E.D.N.Y. Feb. 25, 2021), report and recommendation adopted as modified, 2021 WL 1186321 (E.D.N.Y. Mar. 30, 2021).  Additionally, Section 475 of New York's Judiciary Law provides for a lien that attaches to "a verdict, report, determination, decision, award, [or] settlement" in favor of an attorney that appears on behalf of a party.  N.Y. Jud. Law § 475 (emphasis added).  Although this Court respectfully recommends a finding that the "settlement" is null and void per the analysis supra, plaintiff's counsel would be entitled to fees if the settlement was approved and found to be fair under the Cheeks analysis.

[18] Although Adam Robles is not a defendant in this case, he appears to have been acting on behalf of, and as a representative of, Knights, a current defendant.  As such, the Court may impose sanctions upon him as well.  See Saravia v. Royal Guard Fence Co., Inc., 2020 WL 5231696, at *6 n.2 (imposing sanctions on individual who had "close proximity to the litigation[,] . . . gave orders to [p]laintiff [when plaintiff worked for the employer]" and was involved with the attempted settlement at issue).  However, the Court will only recommend sanctions against Knights as they are the primary beneficiaries of the "settlement," albeit for the actions taken on behalf of Knights by Mr. Robles.

agreement.  (Robles Aff. ¶ 4).  Clearly, Mr. Robles and defendants had interacted with attorneys before and understood the importance of having counsel draft legally enforceable documents.  In fact, Mr. Robles admits to the fact that he knew Mr. Dosso's attorney would need to be notified or somehow involved as he "relied on [Dosso's] statement that he would let his attorney know the matter was settled."  (Id. ¶ 7).  Most importantly, however, Mr. Robles arguably knew of the requirements regarding settlements, because, as he stated, the reason he reached out to the Margolin firm was because it had previously represented Knights in "claims for overtime pay." (Robles Aff. ¶ 6).  Additionally, according to Mr. Margolin, he told Robles that the agreement "must come from Margolin & Pierce."  (Defs.' 01/27/2021 Ltr.).

Although it is unclear why Mr. Robles and Knights did not attempt to go through their attorney in effecting the settlement, such active avoidance of responsibility is what Cheeks sought to prevent.  Further, although this Court cannot confirm what occurred during the discussions between Mr. Dosso and Mr. Robles as Mr. Dosso is not present and cannot be found, the Court also considers plaintiff's counsel's assertion that he finds it unlikely that Mr. Dosso would originate these settlement discussions.[19]  (Pl.'s Reply at 5).  This is particularly persuasive considering the fact that defendants were in default and plaintiff was on the verge of obtaining a default judgment, in which he likely would have received more in the way of compensation. (See ECF 11).  Regardless of whether defendants sought to avoid their own attorney's fees, the plaintiff's attorney's fees that follow from successful suits under the FLSA, or a higher damages award to plaintiff, none of these reasons justify settling an FLSA case absent court approval.

---

[19] Whether or not plaintiff initiated the settlement discussions does not change this Court's ability to issue sanctions.  See Saravia v. Royal Guard Fence Co., 2020 WL 5231696, at *2, 7 (imposing sanctions when conflicting statements about who initiated settlement discussions).

Importantly, had defendants simply notified their counsel or plaintiff's counsel in May 2020 that Mr. Dosso reached out to defendants and they were close to settlement, plaintiff's counsel would not have wasted the time required to prepare the default motion. Cf. United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 948 F.2d 1338, 1345 (2d Cir. 1991) (noting monetary sanctions under the bad faith standard can be imposed for "dilatory tactics"). Nor would the current motion before this Court have been required because presumably counsel would have conferred with his client and either the settlement would have been presented to the Court or further discussions would have occurred.

Additionally, the conduct that violated Rule 4.2(a) suggests that the firm and Mr. Margolin not only knew they were aiding the client to achieve a settlement without the knowledge of plaintiff's counsel and without obtaining Cheeks review, but they were acting in bad faith. The assertion that Mr. Margolin and his firm "had no knowledge [of the settlement] nor did it counsel its client to get the adverse party to sign the agreement and release" (Defs.' Reply at 2), is belied by the Robles Affidavit and the actual language of the Settlement Agreement. The Robles Affidavit, which is relied on by Mr. Margolin, states that Robles contacted Margolin & Pierce and "requested that [they] send me a draft settlement agreement setting out the terms." (Roble's Aff. ¶ 6). Thus, Margolin and his firm were aware of the exact case that Robles was talking about, as well as the substance of the negotiations with the plaintiff, because counsel discussed the "terms" of a settlement agreement with his client. Further, the Settlement Agreement refers specifically to the case at hand, "Case No. 1:20-cv-00461." (Settle. Agree. at 1). The fact that Mr. Margolin decided not to contact plaintiff's counsel in the case to discuss the Settlement Agreement indicates at least some degree of intentionality.

Lastly, the inconsistent representations made to this Court by defendants' counsel throughout the motion practice were arguably in an attempt to have this Court enforce a settlement that was obtained in contravention of settled Second Circuit precedent.  Defendants' counsel initially argued that the settlement should be enforced even after he was made aware that neither plaintiff's counsel nor this Court was aware of the settlement.  (See Defs.' 01/27/2021 Ltr. at 1).  Although Mr. Margolin has subsequently withdrawn from that position, he has continued to insist that, had his firm been retained in this matter, it would have complied with Cheeks.  However, in his efforts on behalf of his client to persuade this Court to enforce a settlement obtained in contravention of the Cheeks requirement of court approval, counsel's arguments misrepresented the law as to whether a settlement achieved under these circumstances can stand absent a Cheeks hearing.  Such misrepresentations of the law are grounds for sanctions.  Cf. In re Plumeri, 534 B.R. 315, 330-31 (Bankr. S.D.N.Y. 2010) (sanctioning attorney for misrepresenting whether he knew of pre-petition judgment and failed to disclose it at time of filing as required by bankruptcy procedure).

Plaintiff's counsel cites the Report and Recommendation this Court issued in Misiewicz v. D'Onofrio Gen. Contractors Corp., where this Court declined to issue sanctions when the defense attorney "advised his client to get a release of claims" after the client reached a settlement, based on the Court's finding that the attorney did not "participate in negotiating the terms of the final settlement."  2010 WL 2545439, at *6.  This Court agrees with plaintiff's counsel that this case presents a "more powerful" violation.  (Pl.'s Reply at 2).  Here, defense counsel not only prepared the final Settlement Agreement which clearly referenced the case at issue, stated that all parties were "fully informed and advised by their respective counsel," and provided that the "Agreement is the product of the joint drafting of all parties," but he explicitly

cautioned his client to have the document notarized in order to make it a legally binding agreement, the whole while cognizant of the Cheeks requirements.  (Settle. Agree. ¶¶ 4, 11). Again, because Mr. Margolin and his firm are well aware of the requirements for FLSA settlements as well as the rules of professional conduct, such failure was clearly taken for the "improper purpose" of either (1) attempting to avoid court approval as required by Cheeks or (2) ignoring the fact that their client was attempting to avoid these requirements.

Taken together, the actions of defendants and defense counsel are the exact types of conduct that Cheeks sought to prevent.  After all, the FLSA's "primary remedial purpose" is to "prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees."  Cheeks v. Freeport Pancake House, Inc., 796 F.3d at 207.  Allowing this type of conduct to continue without some sanction would "permit defendants to circumvent the FLSA's 'deterrent effect' and eviscerate FLSA protections."  Armenta v. Dirty Bird Grp., LLC, No. 13 CV 4603, 2014 WL 3344287, at *4 (S.D.N.Y. June 27, 2014).  As such, the Court respectfully recommends that defendants and defense counsel[20] pay plaintiff's counsel's fees for his work on the default judgment and in connection with the instant motion, with the amount to be determined by a later accounting as a sanction for defendants' conduct in attempting to settle this case in contravention of Cheeks.

CONCLUSION

---

[20] Defendants and defense counsel should be held jointly and severally liable for the sanctions in this case.  See Rabin v. Dow Jones & Co., Inc., 665 F. App'x 21, 23 (2d Cir. 2016) (upholding joint and several liability for sanctions against party and counsel under inherent power when court found bad faith); Sterling Promotional Corp. v. General Acc. Ins. Co. of New York, 86 F. App'x 441, 445 (2d Cir. 2004) (holding defendants and defense counsel jointly and severally liable where "court had made it clear to [counsel] that it considered [counsel], and not merely [the party], at fault").

The Court respectfully recommends that the settlement be declared null and void, the case be dismissed without prejudice, and plaintiff's attorney be awarded the fees incurred in preparing the instant motion and the motion for default judgment.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: September 15, 2021
        Brooklyn, New York

*Cheryl L. Pollak*
CHERYL L. POLLAK
United States Magistrate Judge
Eastern District of New York