UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------x

SOUALIOU DOSSO,

                Plaintiff,                  **MEMORANDUM & ORDER**

                                         20-cv-461(EK)(CLP)

           -against-

KNIGHTS COLLISION EXPERTS, INC.,
KNIGHTS TOWING CORP., and JOSEPH
ROBLES.

                Defendants.

--------------------------------------x
ERIC KOMITEE, United States District Judge:

        Plaintiff brought this action in January 2020, alleging wage-and-hour violations under the Fair Labor Standards Act and New York Labor Law.  Despite service, Defendants did not answer the complaint or appear in the case, and so approximately eight months after the filing, Plaintiff's counsel Abdul Hassan requested a certificate of default.  ECF No. 10.  After the Clerk of Court noted Defendants' default on the docket, ECF No. 11, a lawyer for Defendants — Errol Margolin — emailed Hassan to report that Defendants had "settled" the case directly with the individual Plaintiff.  Email dated October 8, 2020 from Errol Margolin to Abdul Hassan, ECF No. 16-2.

        In response, Hassan informed the Court of a possible violation of the *Cheeks* requirement that specified settlements

in FLSA cases must be court-approved before taking effect.  Pl. Ltr. dated Dec. 21, 2020, ECF No. 13 (reporting Margolin's statement that "Defendants had entered into a settlement agreement with Plaintiff"); *see also Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

By the time Mr. Hassan learned of it, the settlement was apparently old news: Margolin told Hassan that Defendants had "settled the claim with Mr. Dosso *many months ago* and paid the settlement amount to your client pursuant to a fully executed settlement agreement."  Email dated October 8, 2020 from Errol Margolin to Abdul Hassan, ECF No. 16-2 (emphasis added).

Acting *sua sponte*, Chief Magistrate Judge Cheryl L. Pollak issued a report and recommendation ("R&R") dated September 15, 2021.  Judge Pollak recommends that I declare the settlement agreement unenforceable based on the *Cheeks* violation and impose sanctions on Defendants and defense counsel, Errol Margolin, in the form of attorney's fees.  R&R 1-2, ECF No. 22 ("R&R").  She also recommends that I dismiss this action without prejudice in light of Plaintiff's counsel's inability to contact his client.  *Id.* at 13-14.  Defendants filed certain objections, *see* ECF No. 23, to which Plaintiff responded.  *See* ECF No. 24.

Given the sanctions component, I called for additional evidence from defense counsel in an abundance of caution.  Mr.

2

Margolin submitted affidavits from himself and Adam Robles, the

Chief Operating Officer ("COO") of defendant Knights Towing, as

well as communications between Robles and others at Margolin's

firm.  None of this evidence undercuts Judge Pollak's

recommendations.  Accordingly, and for the reasons set forth

below, I adopt the R&R in its entirety.

## I.    Discussion

A district court "may accept, reject, or modify, in

whole or in part, the findings or recommendations made by the

magistrate judge."  28 U.S.C. § 636(b)(1)(C).  The district

court reviews *de novo* those portions of an R&R to which a party

has specifically objected.  *Id.*; Fed. R. Civ. P. 72(b)(3); *see*

*also Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290,

296 (E.D.N.Y. 2013) ("A proper objection is one that identifies

the specific portions of the R&R that the objector asserts are

erroneous and provides a basis for this assertion."), *aff'd*, 578

F. App'x 51 (2d Cir. 2014).

Judge Pollak recommends imposing sanctions on

Defendants and defense counsel in the form of attorney's fees,

based on her determinations that:

- ▪ Counsel assisted Defendants in their attempt to end-run the requirements of *Cheeks*, *supra*.  R&R 23.

- ▪ Counsel violated New York Rule of Professional Conduct 4.2(a), which prohibits attorneys from having contact — directly or indirectly — with represented parties.  R&R

3

15-19.

The comprehensive R&R marshaled substantial evidence
in reaching these conclusions, and I will not attempt to recite
all of that evidence here.  Most compelling to me are the
findings that Mr. Margolin continued to violate his obligations
under *Cheeks* for more than ten weeks even after he *admittedly*
became aware of his client's purported settlement with
Plaintiff.  This fact powerfully undercuts Margolin's primary
defense, which is that his client entered into the settlement
without Margolin's knowledge and despite his insistence that he
(counsel) be involved.  *See* Objs. to R&R 1, ECF No. 23;
Affirmation of Errol Margolin ("Margolin Aff.") ¶¶ 4-8, ECF No.
31.

Margolin's email to Hassan, dated October 8, 2020,
acknowledges that the settlement occurred "many months" ago.
Email dated October 8, 2020 from Errol Margolin to Abdul Hassan,
ECF No. 16-2.  So we know Margolin was aware of the settlement
by October 8 at the latest, if not some point during the many
months prior; and he plainly made no direct effort to notify the
Court and / or seek Court approval thereafter, despite his
obligations under *Cheeks*.  *See Cheeks*, 796 F.3d at 200
("[P]arties cannot settle their FLSA claims through a private
stipulated dismissal with prejudice . . . ."); *Jones v. Smith*,
319 F. Supp. 3d 619, 622 (E.D.N.Y. 2018) (Levy, M.J.) ("The

Second Circuit held in *Cheeks* that court approval is required for all stipulated dismissals of FLSA actions with prejudice . . . ."); *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) ("Parties cannot privately settle FLSA claims without either the approval of the district court or the Department of Labor.").[1]  Instead, it was Plaintiff's counsel who brought the settlement to the Court's attention on December 21.[2] Pl. Ltr. dated Dec. 21, 2020, ECF No. 13.

The sanctions award is appropriate based on the *Cheeks* issue alone — even without reference to Judge Pollak's finding that Mr. Margolin violated Rule 4.2(a).  Attorneys have a duty of candor to the Court, in addition to the obligations arising from *Cheeks*.  *See In re Fengling Liu*, 664 F.3d 367, 372 (2d Cir. 2011); *cf.* N.Y. Rules of Prof'l Conduct R. 8.4 cmt [4] (2021) ("[A] lawyer may not disregard a specific ruling or standing rule of a tribunal, but can take appropriate steps to test the validity of such a rule or ruling.").  Even if Mr. Margolin had genuinely been surprised to learn that his client made an unauthorized end-run around the *Cheeks* process — a dubious proposition, given the record laid out by Judge Pollak — he was

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

[2] The period from October 8, 2020 to December 21, 2020 comprises seventy-four days.

still obligated to bring the settlement to the Court's attention

so that it could conduct the required fairness review.  *See*

*Douglas v. Allied Universal Sec. Servs.*, 371 F. Supp. 3d 78, 82

(E.D.N.Y. 2019) (Bulsara, M.J.) ("Under *Cheeks*, parties cannot

privately settle FLSA claims with prejudice absent the approval

of the district court and must satisfy the Court that their

agreement is fair and reasonable."); *e.g., Orosco Hernandez. v.*

*Nuria's Restaurante Salvadoreno Inc.*, No. 18-cv-6577 (E.D.N.Y.

Oct. 9, 2020) (sanctioning attorney who did not notify the court

after learning that her client reached a settlement with

defendants on her own: "Counsel had an obligation to notify the

Court so that a fairness review pursuant to *Cheeks* . . . could

be conducted.").  Instead, Mr. Margolin simply asked Plaintiff's

counsel to "please advise the court the matter was settled

before answer [sic]."  Email dated October 8, 2020 from Errol

Margolin to Abdul Hassan, ECF No. 16-2.

It quickly emerged that the settlement agreement Mr.

Margolin drafted was unlikely to pass muster under *Cheeks*

review.  For example, Judge Pollak notes that the agreement

contains a broad general release.  R&R 13 n.11 (citing

Settlement Agreement ¶ 2, ECF No. 16-3 ("Full and Final Release"

provision "forever discharging" defendants "from any and all

manner of actions, causes of action, suits, . . . claims and

demands whatsoever, . . . known or unknown, foreseen or

unforeseen, from the beginning of time to and including the

Effective date")).  Courts in this circuit "routinely reject

release provisions that waive practically any possible claim

against the defendants, including unknown claims and claims that

have no relationship whatsoever to wage-and-hour issues."

*Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228

(S.D.N.Y. 2016); *see also Cheeks*, 796 F.3d at 206 (noting that

the inclusion of such releases "highlights the potential for

abuse in [FLSA] settlements, and underscores why judicial

approval in the FLSA setting is necessary").  Margolin's

inclusion of this broad — and likely unenforceable — release

constitutes additional evidence that he never intended for the

agreement he drafted to be submitted to judicial review and

approval.  *Cf.* Defs. Ltr. dated Feb. 22, 2021, at 2, ECF No. 21.

Once the *Cheeks* violation came to light, Mr. Margolin

compounded these failures by urging the Court to enforce the

settlement agreement.  *See* R&R 3-4.  After Judge Pollak issued

an order to show cause, he wrote the court to insist that

Plaintiff "is bound by what he signed; knew what he signed; and

his signature is witnessed by a notary who also signed the

agreement."  *Id.* at 4 (citing Defs. Ltr. dated January 27, 2021,

ECF No. 18).  In effect, Mr. Margolin was content to pretend

that the *Cheeks* obligation did not exist and to urge the court

to do the same.  Judge Pollak risks understatement when she

concludes that Margolin showed, "at best, a deliberate indifference to the need for and the purposes behind the *Cheeks* requirement of judicial approval."  R&R 12.

The deliberate nature of the conduct at issue is further highlighted by the fact that Mr. Margolin has been warned about his conduct in a previous FLSA case.  In *D'Arpa v. Runway Towing Corp.*, Mr. Margolin – who was representing defendants in an FLSA collective action – prepared a signature form for a *plaintiff* to withdraw from the action, without communicating with plaintiffs' counsel in the process.  Tr. of Proceedings at 7-19, *D'Arpa v. Runway Towing Corp.*, No. 12-cv-1120 (E.D.N.Y. Oct. 16, 2012), ECF No. 50.  After plaintiffs' counsel brought this to the court's attention, the court held a hearing to remind the lawyers of the potential need for a fairness hearing before plaintiff could withdraw, and prohibited Mr. Margolin from directly contacting plaintiffs or counseling his clients to contact them.  *Id.*  This prior caution goes to the Court's assessment of the *severity* of the conduct at issue here, as well as its deliberateness.

Defense counsel objects to the sanctions recommendation on the ground that he never intended for — or advised — his client to have the settlement agreement

8

executed.[3]  Mr. Margolin says his firm sent his client the draft

agreement only to solicit questions and comments, not for

transmission to the opposing party.  Objs. to R&R 2, ECF No. 23.

In support of this position, Mr. Margolin submitted affidavits

from himself and Adam Robles, his client's COO, as well as email

communications between Robles and other employees at Margolin &

Pierce.  In those emails, Robles informed Mr. Margolin that

defendants were "able to get Dosso to settle the case" and

inquired: "we want to mail the settlement to him with the

checks, should the mail settlement come from your office or

ours?"  Email dated March 27, 2020 from Adam Robles to Margolin

& Pierce, ECF No. 31-2.  In response, Margolin & Pierce employee

Ann Hamilton directed the client that the "final settlement

agreement will come from Margolin & Pierce."  Email dated March

30, 2020 from Margolin & Pierce employee Ann Hamilton to Adam

Robles, ECF No. 31-3.  The email further directed Mr. Margolin's

client to provide certain information to the firm.  *Id.*  Mr.

Margolin avers that he never heard back from his clients about

the draft agreement, and had no idea that the matter had been

resolved until his client told him.  Margolin Aff. ¶¶ 4-6.

---

[3] Defense counsel does not object to the portion of the R&R recommending sanctions against his clients.  In fact, defense counsel writes that his client "disregard[ed] his counsel's instructions and act[ed] alone."  Objs. to R&R 2, ECF No. 23.

Thus, he claims, the "settlement was not effectuated by [his] office."  *Id.* ¶ 5.

This assertion is strained on its face, and the additional materials submitted by Mr. Margolin do not undermine Judge Pollak's recommendation.  First, they are in tension, at least, with Margolin's defense.  Margolin asserts that he had no idea a final settlement was underway – *i.e.*, that after his firm prepared a draft settlement agreement and sent it to the client, the client "did not return the agreement, nor . . . respond to this email," and that the firm "followed up on two occasions to finalize the settlement but never heard back from Knights." Objs. to R&R 1, ECF No. 23; *see also* Def. Ltr. dated Dec. 29, 2020, ECF No. 16.  But the email exchange he submitted tends to undermine these positions: it shows that Margolin's firm regarded the agreement as "final," and communicated as much to the client.  Specifically, Ann Hamilton from Margolin & Pierce emailed defendant Knights's COO what she called a "final settlement agreement" on April 8, 2020.  ECF No. 31-4.  The email's subject line also included the word "final."  *Id.* ("Re: Settlement Agreement (Dossa [sic] v. Knights) – Final"); *see also* Email dated April 9, 2020 from Adam Robles to Margolin & Pierce, ECF No. 31-5 (same subject line).  The next day, the COO responded with a single edit: "Everything looks good can we just take the word CASH out . . . other than that correction

10

everything looks good."   Email dated April 9, 2020 from Adam

Robles to Margolin & Pierce, ECF No. 31-5.

These events, and those that followed, tend to

undermine Margolin's assertion that his firm followed up with

the client to no avail.   In an email dated April 20, Ms.

Hamilton emailed Robles again to say that the settlement

agreement had been sent on April 9, but was "nonetheless

attached again."   *Id.*   Hamilton did not inquire about next steps

or provide additional instructions to the client; her email to

the COO simply says, "Let me know if you need anything else."

*Id.*   And Margolin has pointed to no concrete evidence that *he*

*followed up* with the client at all, let alone on multiple

occasions.   Simply put, the record reveals no credible evidence

that defense counsel intended anything other than for this to be

the "final" settlement agreement.

Furthermore, the additional evidence provides little

support for Mr. Margolin's claim that he did not violate Rule

4.2(a).   The emails do reflect Margolin's firm instructing the

client that the final settlement would come from the firm.   *See*

Email dated March 30, 2020 from Margolin & Pierce employee Ann

Hamilton to Adam Robles, ECF No. 31-3.   Margolin avers that the

firm so instructed his client because he "fully expected to

distribute the agreement through counsel had it been returned."

Margolin Aff. ¶ 5.   In the same email, however, the firm

11

specifically asked the client for Plaintiff's "full address."
*See* Email dated March 30, 2020 from Margolin & Pierce employee
Ann Hamilton to Adam Robles, ECF No. 31-3; *see also id.* (noting
that "we have the attorney's email info not Dossa's [sic]").  If
Mr. Margolin and his firm really intended to distribute the
final agreement only to Plaintiff's counsel, it is unclear why
they would need Plaintiff's own contact information.[4]

      For the foregoing reasons, the recommendations that I
(a) declare the settlement agreement void and unenforceable and
(b) impose sanctions on Defendants and Mr. Margolin are well
founded, and I adopt both.

      Finally, Judge Pollak recommends dismissal without
prejudice because Plaintiff's counsel has been unable to contact
his client, rendering it impossible to continue this case.  This
course is appropriate in the circumstances.  *See, e.g.*, *Mora v.
Bareburger Grp. LLC*, No. 16-cv-4373, 2018 WL 4522086, at *4
(E.D.N.Y. July 12, 2018) (recommending dismissal without
prejudice under Federal Rule of Civil Procedure 41(b) where
plaintiffs' attorney was unable to contact plaintiffs), *R&R
adopted in relevant part*, No. 16-cv-4373, 2018 WL 4954088
(E.D.N.Y. Oct. 11, 2018); *In re McRay, Richardson, Santana,*

---

    [4] Ann Hamilton's email indicates that the firm needed the full
address to include it in the agreement, but the "final" settlement
agreement did not recite Plaintiff's address anywhere among its provisions.
*See generally* Settlement Agreement, ECF No. 16-3.

*Wise, & Salaam Litig.*, No. 3-cv-9685, 2011 WL 7972478, at *1

(S.D.N.Y. Dec. 12, 2011) (recommending dismissal without

prejudice where plaintiff's counsel was unable to locate

plaintiff, and plaintiff did not inform the court or his counsel

of any address change), *R&R adopted*, No. 3-cv-9685, 2012 WL

1948800 (S.D.N.Y. May 30, 2012).

## II. Conclusion

Having conducted a *de novo* review of Judge Pollak's

thorough report and recommendation, the Court finds no error and

adopts it in its entirety.  The Court thus declares the

settlement agreement to be void and unenforceable under *Cheeks*;

dismisses the case without prejudice; and orders that

Plaintiff's counsel be awarded attorney's fees incurred in

preparing the instant motion and motion for default judgment.

Plaintiff's counsel is directed to file a motion for reasonable

attorney's fees by July 12, 2022; that motion for attorney's

fees is respectfully referred to Magistrate Judge Pollak for

Report and Recommendation.   The Clerk of Court is respectfully

directed to close the case.

       SO ORDERED.


                                    __/s/ Eric Komitee_____
                                    ERIC KOMITEE
                                    United States District Judge


Dated:      June 10, 2022
             Brooklyn, New York